THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM GRAMC, Defendant-Appellant.

Fifth District    No. 5—92—0744

Opinion filed March 8, 1995.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LEWIS delivered the opinion of the court:

Defendant, William Gramc, appeals from the denial of his postconviction petition after an evidentiary hearing to reverse his conviction for aggravated criminal sexual assault. On appeal, he contends only that he was denied his constitutional right to be present at all crucial stages of the proceedings, as he was not present or consulted when the court addressed a note from the deliberating jury. Defendant maintains that he was prejudiced by being absent, because he thereby lost an opportunity to have the jury instructed on the lesser offense of criminal sexual assault, which instruction he asserts was supported by the evidence.

The facts are simple and brief. While the jury was deliberating, the following occurred in the judge's chambers out of the hearing of the jury:

"THE COURT: Let the record show the bailiff has handed me a question that the jurors gave him. It reads, can we find the defendant guilty of rape without the weapon part? I am suggesting that I would just tell them they have everything they need before them to reach a decision, and they should re-read their instructions. Anything—

MR. HAIDA [assistant State's Attorney]: I don't think you can say anything else.

MR. GOMRIC [defense counsel]: I agree.

THE COURT: Anybody have any problem with that?

MR. HAIDA: No.

MR. GOMRIC: No, sir.

THE COURT: Anybody have any problem with the bailiff telling them or you want me to bring them into court?

MR. GOMRIC: Can we write a written response to that. Lot of times in the—

THE COURT: Yes, it wouldn't hurt. Why don't you do it on the bottom of this. Put down, you have all the instructions before you with which you are to reach a decision. You should re-read those instructions. Is that fine?

MR. HAIDA: That's fine."

The transcript does not reflect whether defendant was present during the foregoing conference. Defendant maintains that he first learned of the communication between the court and the jury by reading the transcript of his trial when this case was before the appellate court on his first appeal. The State does not deny defendant's allegation, so we presume that defendant was not present when the court decided what response to make to the jury's note.

It must be kept in mind that the whole case against defendant revolved around the believability of the complainant. One of the primary arguments that defendant made was that the complainant was not believable because her story about defendant having a knife was not supported by any evidence other than complainant's testimony. Defendant repeatedly emphasized the evidence that no knife was found on him when he was arrested by the police soon after complainant allegedly escaped. Opening statements, cross-examination, and closing arguments were all concentrated on the believability of complainant, so that if the jury did not believe that defendant had a knife, then complainant's story of being sexually assaulted was false. The defense strategy was in legal jargon "to roll the dice." Either the jury believed complainant entirely and in every aspect of her testimony and could only find defendant guilty of a major felony, or else the jury must find defendant not guilty and let him go. There was no in between. The supreme court recognized this type of trial strategy in *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005, and found that it was not patently wrong for the appellate counsel not to raise the issue of incompetency of trial counsel on appeal due to such strategy.

We need to provide a short history of this unique case so that the reader can fully understand the posture of the issue before us. Defendant was convicted by a jury of aggravated criminal sexual assault and was sentenced to 26 years' imprisonment. This court affirmed the judgment of the circuit court on April 29, 1989, in *People v. Gramc* (1989), 181 Ill. App. 3d 729, 537 N.E.2d 447. Defendant's petition for leave to appeal was denied by the Illinois Supreme Court on October

5, 1989. (*People v. Gramc* (1989), 127 Ill. 2d 626, 545 N.E.2d 120.) On the original appeal, defendant argued that he was not proven guilty beyond a reasonable doubt and that his sentence was excessive.

Defendant filed his post-conviction petition on August 12, 1992, well beyond the expiration of the limitations period provided in section 122—1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 (West 1992)). Although the State objected to the timeliness of the petition in the trial court, the trial court reserved its ruling but never ruled. For some unknown reason, on appeal the State did not raise the issue of the expiration of the limitations period. We have decided to answer the issues raised rather than to *sua sponte* dismiss the petition for violating section 122—1.

After briefs were submitted by both defendant and the State, our supreme court delivered its opinion in *People v. Childs* (1994), 159 Ill. 2d 217, 636 N.E.2d 534, holding that jury deliberations are a critical stage of the trial and that it is improper for a judge to have *ex parte* communications with the jury during deliberations. The supreme court further held that in order to sustain a jury's verdict after an improper *ex parte* communication by the judge with the jury, "it must be apparent that no injury resulted from the *ex parte* communication," and that "the burden is on the prosecution, not the defendant, to prove that any error in the giving or the substance of the *ex parte* response to a jury inquiry is harmless beyond a reasonable doubt." *Childs*, 159 Ill. 2d at 234, 636 N.E.2d at 542.

The issue in the case at bar became more complex when our supreme court delivered its recent decision in *People v. Brocksmith* (1994), 162 Ill. 2d 224. In *Brocksmith*, our supreme court held that the decision as to whether to tender a lesser-included-offense instruction belongs to defendant, not defendant's counsel.

In view of the *Childs* and *Brocksmith* decisions, this court reversed its decision to dispose of this case without oral argument. Oral argument was made, but the briefs in this cause were not amended to reflect the changes in the law caused by *Childs* and *Brocksmith*. We reluctantly believe that we must push forward into uncharted areas, even though the issues are not clearly defined or discussed by counsel, because of the importance of the issues to the trial courts. We must first decide if *Childs* requires a reversal of this cause and, if not, then consider *Brocksmith* in relation to the facts.

We could distinguish the case at bar from *Childs* by the fact that in *Childs* the trial judge's communication with the jury was entirely *ex parte*, whereas the communication in this case was made with the knowledge and approval of defendant's counsel. In fact, the record indicates that it was defendant's own counsel who wrote the com-

munication that was given to the jury. Normally, we would not consider a communication by a judge with both parties' counsel to be *ex parte*. The closest case to the case at bar that our research revealed is *People v. Reid* (1990), 136 Ill. 2d 27, 554 N.E.2d 174. In *Reid*, the jury inquired whether it could find defendant guilty of one offense and not another; the supreme court held that no error was committed where defendant's counsel made no objection to the trial court's answer directing the jury to reach a verdict based on the instructions. We note that, in *Reid*, the defendant was not personally made aware of or consulted by his counsel as to several inquiries from the jury.

Regardless of the holding in *Reid*, the supreme court in *Childs* stated that "a defendant has an absolute right to be informed of any jury question involving a question of law and to be given the opportunity to participate for his protection in fashioning an appropriate response." (*Childs*, 159 Ill. 2d at 234, 636 N.E.2d at 542.) Moreover, *Childs* held that jury deliberations are a critical stage of the trial. It is axiomatic that a defendant should be present at all critical stages of the criminal proceeding. There is nothing in *Reid* that indicates that the issue of the trial court's failure to ensure that defendant was personally notified and given an opportunity to participate was raised on appeal. Since defendant was not informed of the communication or given the opportunity to fashion an appropriate response in the case at bar, we will take literally the latest pronouncement by our supreme court contained in *Childs* and find that error was committed. We also note that the State argues waiver of the issue because it was not raised in a post-trial motion or on the first appeal. However, a communication between the jury and the trial court without defendant being present or his presence being waived is plain error. *Childs*, 159 Ill. 2d 217, 636 N.E.2d 534; *People v. Lowery* (1988), 177 Ill. App. 3d 639, 532 N.E.2d 414.

Once error has been found because of the improper communication without a waiver of presence, consent, or knowledge by the defendant, *Childs* requires us to examine the record to see if the defendant suffered any injury. It is on this point that *Childs* is distinguishable from the case at bar.

In *Childs*, the jury was confused as to the instructions of law, and the trial court was confused about the jury's question to the court. The State conceded that an "intricate" and "difficult" point of law was raised by the jury's inquiry. (*Childs*, 159 Ill. 2d at 231, 636 N.E.2d at 541.) The trial court's response to the jury's inquiry was for the jury to read the instructions and continue to deliberate, which, so the court reasoned, was tantamount to no answer at all, leaving the

jury with no guidance for resolving its problem. Contrary to *Childs,* the trial court in the case *sub judice* gave the only response that the court could rightfully give.

The jury was not requesting aid in the interpretation of any instructions of law; rather, the jury was merely considering, at best, the possibility of finding defendant guilty of a lesser offense. We must keep in mind that the record reflects that the jury only deliberated a total of 1 hour and 50 minutes and that the transcript indicates that only a short recess occurred between the time the jury retired to deliberate and the time the note was sent to the court. The record, therefore, does not really reflect that the jury was seriously debating finding defendant guilty of a lesser crime.

The problem with defendant's argument is that he assumes, due to *People v. Sinnott* (1992), 226 Ill. App. 3d 923, 590 N.E.2d 502, that the court could have called the jury back to the courtroom and instructed the jury as to a lesser-included offense and provided additional verdict forms. *Sinnott* is distinguishable, because the court ruled that a judge could *sua sponte* give lesser-included-offense instructions over the objections of defendant at the conference on instructions, not after the jury commenced its deliberations. Moreover, *Brocksmith* may have overruled *Sinnott* by its holding that the decision to give lesser-included-offense instructions and verdict forms belongs to the defendant and not his counsel. If the right belongs personally to defendant and not his counsel, it would appear that a judge should not have more of a right than defendant's counsel to make the decision for the defendant and against defendant's wishes. Of course, the judge could refuse the instructions if the evidence did not support such. See *People v. Reid* (1990), 136 Ill. 2d 27, 554 N.E.2d 174.

Further, in *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005, the supreme court held that it would "not have been proper for the judge to interfere with defense counsel's strategy and give the self-defense and voluntary-manslaughter instruction[s] *sua sponte.*" (*Barnard,* 104 Ill. 2d at 232, 470 N.E.2d at 1010.) The *Sinnott* court did not even mention *Barnard,* so apparently the court was unaware of *Barnard* or was unaware that its ruling was contrary to a holding of the supreme court. In defense of the *Sinnott* court, the court did say that "[a] court should exercise restraint in giving instructions on its own motion when the instructions could interfere with defense strategy." *Sinnott,* 226 Ill. App. 3d at 932, 590 N.E.2d at 508.

The State and defendant do not cite nor does our research reveal any Illinois cases in which a trial court submitted lesser-included-offense instructions and verdict forms after closing arguments and

during deliberations of the jury. This is apparently a case of first impression.

If the trial court had called the jury back and instructed the jury at the request of defendant as to the lesser-included offense, a whole new theory would have been introduced. The jury would not have heard any argument by counsel as to the lesser-included offense. The State would not have been given any chance to respond to this new theory. The obvious argument to the jury by the State, if this lesser-included-offense instruction had been given prior to closing arguments, would have been that you cannot partially believe complainant's testimony. She is either telling the truth or she is lying. Defendant could not have done all that complainant said that he did (sexually assaulted her in the bathroom of the laundromat for $1^{1}/_2$ to 2 hours without her crying out to other patrons; unlocked the driver's door and got into the car before unlocking the passenger door from the inside so that complainant could get in from the passenger's side of the car; drove complainant to a convenience store and left her in the car for five minutes without her honking the horn or leaving the car) unless defendant had a knife. The jury would be left with the impression by the court that it would be proper to believe that complainant was telling the truth about being criminally sexually assaulted but was not telling the truth when she said that defendant held a knife to her throat.

As the court pointed out in *Brocksmith*, the giving of an instruction or verdict form as to the lesser offense would have been tantamount to a plea of guilty. (*Brocksmith*, 162 Ill. 2d at 228.) Granted, this instruction, if given while the jury was deliberating, would have for all practical purposes prevented the jury from finding defendant not guilty, contrary to his trial strategy, but it would have done more than that. In effect, it would have allowed defendant to test his trial strategy and, if he saw that his strategy was failing by the jury's indication in its note to the court that it wanted to know if it was proper to consider finding defendant guilty of something less than charged, to then provide defendant a chance to salvage a conviction on a lesser charge without the State being provided with any opportunity to contest such. Moreover, the instructions and verdict forms might have been construed by the jury as an indication of "a specific verdict to the jury, a verdict that would hurt both the State, which wanted a conviction ***, and the defendant, who wanted an acquittal." *Reid*, 136 Ill. 2d at 41, 554 N.E.2d at 180.

This may be a case of first impression, but we hold that once a jury retires to deliberate, the court should not submit new charges and new theories to the jury after the jury commences its delibera-

tion, regardless of which party requests such. If fundamental justice requires the giving of such instructions and verdict forms, it might be better to declare a mistrial, provided that no double jeopardy issues would arise.

We must now consider if reversible error was committed when the court did not *sua sponte* give a lesser-included-offense instruction and verdict forms or suggest at the conference on instructions that such be given. In *Brocksmith*, the court held that the decision to give a lesser-included-offense instruction and verdict forms rested solely with defendant and not his counsel. Is the reverse equally the law? Must a court obtain a waiver by the defendant of not giving the lesser-included-offense instruction and verdict forms? Does the trial judge have a duty to determine if there are possible lesser-included offenses and then to inquire of defendant if defendant wishes the jury to be instructed and given the opportunity to find him guilty of a lesser offense? Must a trial judge obtain a waiver from defendant for not giving to the jury instructions and verdict forms on every possible lesser-included offense or else risk reversal? Can a judge *sua sponte* give lesser-included-offense instructions and verdict forms on uncharged offenses? In *Sinnott*, our colleagues from the fourth district even attempted to set forth, as guidance, rules for a trial judge to adhere to at a conference on instructions when determining whether to give instructions on uncharged lesser-included offenses. The issue of lesser-included offenses is of major importance in all criminal cases that go to trial, whether jury or bench.

We do not believe that the reverse of *Brocksmith* is the law. First, the supreme court ruled in *Brocksmith* that the giving of the instruction and verdict forms was tantamount to pleading guilty, thus requiring the personal consent of defendant to give the instruction and verdict forms. If the court interjects the instruction as to the lesser-included offenses *sua sponte*, it follows that the court is removing any chance of defendant being found not guilty, and so, in a sense, the court is directing a verdict for the State or forcing defendant to plead guilty. Second, the nonact of not tendering an instruction and verdict forms to lesser-included offenses cannot be perceived to be a guilty plea in some form or fashion. After all, defendant could be found not guilty of the greater crime in accordance with his counsel's trial strategy, so how could the possibility of being found not guilty be construed as a finding of guilt? Third, defendant was not charged with the lesser-included offense, and he is not being found guilty of it. It is hard to conceive, except in cases of incompe-

tency of counsel, how not being found guilty of a crime or not having a judge or jury consider a crime, for which defendant is not even charged, could somehow be a violation of defendant's constitutional rights.

The trial judge was not requested by defendant in the case at bar to give a lesser-included-offense instruction and verdict forms at the conference on instructions. As we have already noted, *Barnard* holds that the giving of a *sua sponte* instruction and verdict forms by the trial court would be improper. Further, *Barnard* also holds that the court is under no obligation to give instructions, and "[a] party may not raise on appeal the failure to give an instruction unless he shall have tendered it." (*Barnard*, 104 Ill. 2d at 232, 470 N.E.2d at 1010.) Here, the lesser-included-offense instruction was not tendered by defendant, and it would have been contrary to defense counsel's trial strategy. More importantly, the instructions would have placed defense counsel in the unenviable position of having, at the last minute, to discuss a theory in closing arguments that contradicted his opening statement, his cross-examination of the State's witnesses, defendant's witnesses, and most of his closing argument.

If the trial court had decided *sua sponte* to raise the issue with defendant, the court would have been interjecting itself into and interfering with attorney-client relations. In a few minutes, the court could have destroyed not only the confidence of defendant in his counsel but months of preparation and thought by counsel as to how best defend the case. We should not expect defendant and his counsel to adequately discuss in a few short minutes, or even an hour, before closing arguments, trial strategy and the pros and cons of lesser-included-offense instructions raised spontaneously by a judge at the conference on instructions. We would be creating more incompetency-of-counsel questions than we are settling in this opinion.

We disagree with our colleagues from the fourth district as to the advisability of the court *sua sponte* interjecting into a case theories and defenses that are contrary to the theories and defenses of defense counsel and the State. If the State and the defense want an all-or-nothing decision, why should the court force a compromised decision that allows a jury to avoid making the difficult decision as to whether the defendant has been proven guilty beyond a reasonable doubt? In the case at bar, either defendant raped complainant at knifepoint, or he did not rape her at all. Why hedge the verdict?

Accordingly, we find that any error committed by the trial court in not having defendant present when the court and counsel

fashioned a response to the jury's question was harmless beyond a reasonable doubt.

Affirmed.

MAAG, P.J., and HOPKINS, J., concur.